IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| FOCUSPOINT INTERNATIONAL, INC., | ) | Case No. 1:20-cv-2019 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| SARAH BALDEO, et al., | ) | |
| | ) | |
| Defendants. | ) | **REPORT AND** |
| | ) | **RECOMMENDATION**[1] |

Pending before the court is defendant Sarah Baldeo's pro se motion to dismiss under Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure and the doctrine of *forum non conveniens*. ECF Doc. 38. Plaintiff Focuspoint International, Inc. ("Focuspoint"), has filed an opposition. ECF Doc. 41 (original); ECF Doc. 42 (corrected version). Baldeo did not seek leave to file a reply in support. I recommend that Baldeo's motion be DENIED.

I.  **Factual Background**[2]

In May 2020, the State of Maryland contracted with Akata Global LLC ("Akata") to purchase N95 face masks on Maryland's behalf. ECF Doc. 17 at 5. Akata, in turn, contracted with Focuspoint, an Ohio-based company, to facilitate acquisition of the masks. ECF Doc. 17 at 2-3, 6. Focuspoint assigned the task of working with Akata to: (i) Ryan Hawley, Focuspoint's

---

[1] This matter is before me pursuant to Judge Christopher A. Boyko's order of referral for general pretrial supervision. *See* L.R. 72.1, 72.2; 28 U.S.C. § 636(b).
[2] The recitation of facts in this section derives from Focuspoint's amended complaint (ECF Doc. 17), which we must construe in a light most favorable to Focuspoint. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 893 (6th Cir. 2002).

then-President of Medical Services; and (ii) Baldeo, then-Director of Sales of ISB Canada, a Canadian procurement services company. ECF Doc. 17 at 2-3, 6. Focuspoint alleges that although Baldeo was employed by ISB Canada, it engaged her to work as Focuspoint's agent in the N95-mask acquisition with Akata and Maryland because she had a prior personal business relationship with one of Akata's principals, Craig Baptiste.[3] ECF Doc. 17 at 6-7; ECF Doc. 42-1 at 2-3. According to the amended complaint, Focuspoint and ISB Canada were not subsidiaries of a common parent company, were unaffiliated, lacked a corporate relationship, and did not have an "identity of ownership" between one another.[4] ECF Doc. 17 at 3.

Focuspoint contacted The Recon GRP ("Recon"), a company specializing in supply chain management. ECF Doc. 17 at 7. Several agreements followed between May 4 and 13, 2020, including: (i) a referral fee agreement between Focuspoint and Akata, whereby Focuspoint was to receive one-sixth of the fee Recon would be paid by Akata to acquire the masks; and (ii) a purchasing agent agreement between Akata and Recon, whereby Recon would be paid $0.30 for each mask Akata purchased. ECF Doc. 17 at 7-8.

Meanwhile, on May 6, 2020, Baldeo demanded that ISB Canada revise the terms of her compensation or increase her commission on transactions involving pandemic response solutions. ECF Doc. 17 at 8. If her demands were not met, she threatened to resign and continue working on the N95-mask acquisition as an independent consultant. ECF Doc. 17 at 8-9. Baldeo's request was denied, after which she sent to her personal email account several files,

---

[3] The court notes neither plaintiff nor defendants filed a copy of a contract between Focuspoint and ISB Canada or Baldeo. Although it seems likely that any such contract would have been entered into between the entities Focuspoint and ISB Canada and likely that ISB Canada assigned the work to Baldeo, the court is required to construe the facts as alleged for purposes of determining a motion to dismiss.
[4] By contrast, the original complaint alleged that ISB Canada (referred to as "ISB Global Services") was Focuspoint's "sister company." ECF Doc. 1-3 at 4.

including files relating to the N95-mask acquisition and trade secret information. ECF Doc. 17 at 9.

On May 7, 2020, Baldeo, unbeknownst to Focuspoint, wrote to Baptiste and executed a consulting agreement between Akata and Baldeo's consulting firm, IDQ Consultants ("IDQ"). ECF Doc. 17 at 9. Baldeo also proposed to Akata a consultation fee of 8% of the total amount paid to Akata by Maryland and recommended a minimum purchase of 60 million N95 masks. ECF Doc. 17 at 10-11. Hawley was allegedly working with Baldeo in secret to secure the separate commission fee arrangement, from which he would profit as well. ECF Doc. 17 at 11.

Akata ultimately agreed to purchase 65 million N95 masks at a unit price of $1.66 ($107,900,000 in total). ECF Doc. 17 at 12. By this time, however, Maryland and Akata's executives had learned of and were "disturbed" by Baldeo's consulting fees. ECF Doc. 17 at 11-12. On May 12, 2020, Baldeo offered a revised consulting agreement with a 3% commission, but Baptiste conveyed to Baldeo it still caused issues with Akata and Maryland. ECF Doc. 17 at 12. Baldeo then entered into a new consulting agreement with Akata with a flat fee of $3 million for the N95-mask acquisition. *Id.* In light of the delays caused by the fee negotiations, the N95-mask acquisition was never consummated, resulting in Focuspoint missing out on $3,250,000 in commissions under its referral fee agreement with Recon. ECF Doc. 17 at 13-14.

## II.     Relevant Procedural History

On August 14, 2020, Focuspoint filed a complaint in the Cuyahoga County Court of Common pleas against Baldeo and Hawley on claims of breach of fiduciary duty and tortious interference with economic advantage. ECF Doc. 1-3. On August 9, 2020, Hawley removed the case to this court. ECF Doc. 1. Baldeo had not been served with process. ECF Doc. 1 at 2.

3

On October 13, 2020, Baldeo, through counsel, filed a motion to dismiss for lack of personal jurisdiction and under the forum-selection clause of her employment agreement with ISB Canada. ECF Doc. 5. Focuspoint filed an opposition and moved for leave to file an amended complaint to assert more fully a basis for personal jurisdiction. ECF Doc. 9; ECF Doc. 10. On April 28, 2021, the court granted Focuspoint leave to file an amended complaint and denied as moot Baldeo's motion. ECF Doc. 15. On May 7, 2021, Focuspoint filed its amended complaint, seeking to assert personal jurisdiction over Baldeo pursuant Ohio Rev. Code § 2307.382(A)(1), (3), and (4).[5] ECF Doc. 17 at 4. Baldeo's attorney also moved to withdraw, which the court granted. ECF Doc. 16; Docket Entry dated 5/10/2021.

On June 7, 2021, Baldeo filed, pro se, an answer to Focuspoint's amended complaint. ECF Doc. 21. Focuspoint moved to strike the answer as containing immaterial, impertinent, and scandalous material. ECF Doc. 22; ECF Doc. 22-1. On July 22, 2021, Baldeo filed an opposition, to which Focuspoint replied and moved to strike as untimely. ECF Doc. 31; ECF Doc. 32; ECF Doc. 33. On August 5, 2021, the court denied Focuspoint's motions to strike. ECF Doc. 34.

On August 11, 2021, Focuspoint filed a report of the parties' Rule 26(f) planning meeting, indicating that the parties, including Baldeo met on July 28, 2021. ECF Doc. 36. On October 22, 2021, Baldeo filed a motion to dismiss, to which Focuspoint filed an opposition on November 22, 2021. ECF Doc. 42.

---

[5] Focuspoint's amended complaint cites subsection (A)(2) (contracting to supply services or goods in Ohio), but alleged instead facts bearing on subsections (A)(1), (A)(3), and (A)(4). ECF Doc. 17 at 4. Given that Focuspoint does not and has not asserted jurisdiction on the basis that Baldeo contracted to supply services or goods in Ohio, I do not read Focuspoint's complaint as asserting jurisdiction under subsection (A)(2). See ECF Doc. 9; ECF Doc. 14; ECF Doc. 42.

### III. Discussion

#### A. Dismissal under Rule 12(b)(2)

Baldeo argues that Focuspoint's claims against her should be dismissed for lack for personal jurisdiction because Focuspoint's complaint lacks sufficient factual allegations to establish jurisdiction under Ohio's long-arm statute or minimum contacts sufficient to satisfy the Due Process Clause. ECF Doc. 38 at 2-8. Baldeo included with her motion a supporting declaration. ECF Doc. 38-1.

Focuspoint responds that Baldeo has forfeited any challenge to the court's personal jurisdiction by opposing leave to amend, filing an answer with exhibits bearing on the merits, opposing the motion to strike, and participating in the Rule 26(f) conference. ECF Doc. 42 at 6-9. Alternatively, Focuspoint argues that Baldeo has insufficiently challenged personal jurisdiction under subsection (A)(4) of Ohio's long-arm statute, that this court has jurisdiction under subsection (A)(1), and that exercising personal jurisdiction over her would not violate due process. ECF Doc. 42 at 9-15. In support of its opposition, Focuspoint submitted the declaration of its CEO, Greg Pearson. ECF Doc. 42-1.

To establish personal jurisdiction, "the defendant must be amenable to suit under the forum state's long-arm statute and the due process requirements of the Constitution must be met." *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1115 (6th Cir. 1994). The plaintiff carries the burden of establishing the existence of personal jurisdiction. *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007). When the court decides personal jurisdiction on the basis of the parties' written submission and supporting affidavits, the plaintiff's burden slight; the plaintiff must make a prima facie showing that personal jurisdiction

5

exists. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). In making its inquiry, the court views the pleadings in the light most favorable to the plaintiff. *Id.*

### 1. Forfeiture

Baldeo did not forfeit a personal jurisdiction challenge by filing an answer. ECF Doc. 42 at 6. Baldeo was not required to enter a special appearance to preserve an objection to personal jurisdiction. *Blessing v. Chandrasekhar*, 988 F.3d 889, 899 (6th Cir. 2021). And Baldeo's pro se answer included several allegations, which, when liberally construed, constitute an attempt to preserve her jurisdictional challenge, thus complying with Rule 12(h).[6] *Id.*; *El Bey v. Roop*, 530 F.3d 407, 413 (6th Cir. 2008); Fed. R. Civ. P. 12(h)(1)(B).

I likewise do not find that Baldeo forfeited a personal jurisdiction challenge by way of her conduct. Baldeo's first action in this case was to move to dismiss for lack of personal jurisdiction, a position she reiterated in opposing Focuspoint's motion for leave to amend. ECF Doc. 5; ECF Doc. 13 at 4. The evidence that she submitted to support her alternative, non-merits basis for dismissal could not reasonably have been seen as an intent to defend the case on the merits. ECF Doc. 5 at 7-11; ECF Doc. 13 at 4-6. Although Baldeo's answer contained factual allegations that went to the merits, it contained other allegations that – when liberally construed – disputed this court's personal jurisdiction over her. Focuspoint could not, therefore, reasonably have believed that Baldeo intended abandon her personal jurisdiction argument, especially when she informed Focuspoint less than a week later that she did not intend to participate in the case on jurisdictional grounds – a stance she has since firmly maintained by not participating in

---

[6] Specifically, Baldeo alleged that: (i) she was a Canadian citizen and resident of Toronto, Ontario; (ii) she did not have property, bank accounts, family, prior work history, or significant connections with the Ohio; (iii) she had no work visa to work in the United States; (iv) she was at all relevant times working as an agent and employee of ISB Canada; (v) she had never been paid by, report to, or entered into an agreement with Focuspoint; (vi) ISB Canada had previously pursued legal action against her in Canada, which stopped following the initiation of the current lawsuit. ECF Doc. 21 at 3, 8, 10.

6

discovery or case management conferences. ECF Doc. 36; *see also* ECF Doc. 47 at 2-3; ECF Doc. 47-1; ECF Doc. 51; *cf. King v. Taylor*, 694 F.3d 650, 659 (6th Cir. 2012).

Baldeo also has not "committed the cardinal sin of causing the court to go to some effort that would be wasted if personal jurisdiction is later found lacking." *Bass v. Bass*, No. 3:20-0203, 2021 U.S. Dist. LEXIS 251292, at *6 (M.D. Tenn. Dec. 6, 2021) (alterations and quotation marks omitted). The court has yet to consider or express itself on the merits of Focuspoint's case against Baldeo, such that no effort has yet been made that would go to waste if the court were to deem it lacks personal jurisdiction against her. Despite Baldeo's failure to appear at case management conferences, she has yet to reach the point at which dismissal on personal jurisdiction grounds would be even more wasteful. *See King*, 694 F.3d at 659; *Bass*, :20-0203, 2021 U.S. Dist. LEXIS 251292, at *6.

2. **Personal Jurisdiction**

    a. **Ohio's Long-Arm Statute**

As relevant here, Ohio's long-arm statute confers personal jurisdiction over a person as to a cause of action arising from her:

(1) Transacting any business in this state;

\*\*\*

(3) Causing tortious injury by an act or omission in this state; [and]

(4) Causing tortious injury in this state by an act or omission outside this state if the person regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state[.]

Ohio Rev. Code § 2307.382(A)(1), (A)(3)-(A)(4).[7]

---

[7] Ohio's long-arm statute also requires that the exercise of personal jurisdiction be consistent with the Constitution. Ohio Rev. Code § 2307.382(C). To date, neither the Ohio Supreme Court nor any of the Ohio appellate courts have addressed whether subsection (C) is coextensive with the Constitution, which

7

> In support of personal jurisdiction, Focuspoint's amended complaint asserts that:
>
> This Court has personal jurisdiction over … Baldeo pursuant to Ohio Revised Code §§[] 2307.382(A)(1), ([3]), and (4) because (i) Baldeo, as agent for FocusPoint, transacted business in the State of Ohio; (ii) Baldeo caused tortious injury to FocusPoint by an act or omission in Ohio; and (iii) Baldeo caused tortious injury to FocusPoint in Ohio by an act or omission outside of Ohio and both engaged in a persistent course of conduct and would have derived substantial revenue from the services that FocusPoint provides in Ohio.

ECF Doc. 17 at 4. Baldeo's motion challenged all three purported bases for jurisdiction, yet Focuspoint's opposition seeks to establish personal jurisdiction only under subsection (A)(1) and (A)(4). ECF Doc. 42 at 9-13. Given that it's Focuspoint's burden to establish personal jurisdiction over Baldeo, I find it has not done so with respect to subsection (A)(3).[8]

I also disagree with Focuspoint's contention that Baldeo forfeited her challenge to personal jurisdiction under subsection (A)(4) by not specifically addressing the "persistent course of conduct" prong or the "derives substantial revenue from goods used or consumed or services rendered in this state" prong. ECF Doc. 42 at 9; *see* ECF Doc. 38 at 3-6. Baldeo accurately quoted subsection (A)(4) and, despite arguing only whether she regularly did or solicited business, clearly intended to challenge personal jurisdiction under this subsection. ECF Doc. 38 at 3-6. In light of Baldeo's pro se status, she sufficiently argued the matter to avoid forfeiture. *El Bey*, 500 F.3d at 413.

---

at least one court in this circuit has expressed would result in the two-part analysis for personal jurisdiction becoming merged in a single Due Process analysis. *Shepard & Assocs. v. Lokring Tech., LLC*, 1:20-CV-02488, 2022 U.S. Dist. LEXIS 19219, at *15 n.9 (N.D. Ohio Feb. 2, 2022) (collecting cases). Because the amendment appears to the relate to the scope of "general" jurisdiction, which is not at issue here, the court need not address the matter. *See Ama Tech Grp. Ltd. v. Fed. Card Servs., LLC*, No. 1:21-cv-406, 2022 U.S. Dist. LEXIS 1655, at *13 (S.D. Ohio Jan. 5, 2022).

[8] I further note that there are no allegations in the amended complaint or Focuspoint's pleadings which, even when construed in the light most favorable to Focuspoint, show that its claims against Baldeo arise out of any act or omission taken by Baldeo *in* Ohio. *See generally* ECF Doc. 17; ECF Doc. 42; ECF Doc. 42-1; *see Busch v. Serv. Plastics. Inc.*, 261 F. Supp. 136, 140 (N.D. Ohio 1966) (stating that subsection (A)(3) requires that both the act/omission and the resulting injury occur in Ohio).

Moving to the issue at hand, Focuspoint has not established a prima facie basis for jurisdiction under subsection (A)(4). Curiously, Focuspoint does not explain how the allegations in the complaint establish personal jurisdiction under subsection (A)(4). ECF Doc. 17 at 4. There are no allegations in Focuspoint's pleadings of what Baldeo's in-state dealings were. *See 3M Co. v. Premier Constr. Sol., LLC*, 3:20-cv-443, 2021 U.S. Dist. LEXIS 159352, at *18 (S.D. Ohio Aug. 24, 2022) ("[P]ersistent course of conduct" means "any conduct that is continuous and not just sporadic … [stemming from contacts] that are distinct from those involved in doing business in Ohio." (quotation marks omitted)). And although Focuspoint alleged that Baldeo stood to derive substantial benefit from Focuspoint's services under the N95-mask acquisition by way of commissions, independent research did not reveal a single case interpreting subsection (A)(4) to include revenue that *would* have been derived absent the defendant's tortious conduct. Instead, courts look to the defendant's *existing* or *prior* sources of revenue in the state. *See, e.g., Irizarry v. E. Longitude Training Co. Ltd., et al.*, 296 F. Supp. 2d 862, 866 (N.D. Ohio 2003); *Hoover Co. v. Robeson Indus. Corp.*, 904 F. Supp. 671, 674 (N.D. Ohio 1995); *Busch v. Serv. Plastics, Inc.*, 261 F. Supp. 136, 142 (N.D. Ohio 1966); *see also, e.g., Lewis v. Horace Mann Ins. Co.*, 2003-Ohio-5248, ¶32 (Ohio Ct. App. 2003); *West v. Trace Am., Inc.*, 2007 Ohio App. LEXIS 3037, at *4 (Ohio App. Ct. 2007); *Jackson v. State St. Bank & Trust Co.*, 110 Ohio App. 3d 388, 398 (Ohio App. Ct. 1996).

I find, however, that Focuspoint has satisfied subsection (A)(1). Although Baldeo wasn't directly transacting business *in* Ohio, Focuspoint alleged that: (i) Baldeo was prosecuting negotiations on Focuspoint's behalf, in conjunction with one of Focuspoint's executives; (ii) the negotiations prosecuted were, in part, for Focuspoint to provide procurement services; and (iii) the negotiations set in motion, but for her double-dealing, would have had a realistic impact

9

on Ohio's commerce (procurement services and $3.250 million in commissions). ECF Doc. 17 at 1-2, 6-7, 13-14; *see Ky. Oaks Mall Co. v. Mitchell's Formal Wear*, 53 Ohio St. 3d 73, 76 (Ohio 1990) (stating that Ohio courts interpret subsection (A)(1) to include prosecuting negotiations, carrying business, and having dealings); *State ex rel. Dann v. Bulgartabac Holding Grp.*, 2007-Ohio-6777, at ¶ 12 (Ohio Ct. App. 2007) ("A defendant is considered to have transacted business in Ohio 'if the business operations set in motion by the defendant have a 'realistic impact' on Ohio commerce.'" (quoting *Priess v. Fisherfolk*, 535 F. Supp. 1271, 1274 (S.D. Ohio 1982)). Bearing in mind the "relatively slight burden," I find that Focuspoint's pleadings and affidavit, when read in the light most favorable to it, suffice to establish a prima facie showing of personal jurisdiction under subsection (A)(1) of Ohio's long-arm statute. *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988); *John Welsh & Flo-Start, Inc. v. Gibbs*, 631 F.2d 436, 440 (6th Cir. 1980) (finding a realistic impact when performance on a contract *would have had* a significant impact on the commerce of Ohio).

### b. Due Process

In order for personal jurisdiction to comport with the Due Process Clause, the out-of-state defendant must "have certain minimum contacts with [the forum state] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotation marks omitted). This requirement can be satisfied in one of two ways, "general" or "specific" jurisdiction, the latter of which is at issue. *Conti v. Pneumatic Prods. Corp.*, 977 F.2d 978, 981 (6th Cir. 1992). For this court to exercise specific personal jurisdiction, three criteria must be met:

> First, the defendant must purposefully avail [herself] of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial

enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000) (quoting *S. Machine Co. v. Mohasco Indus.*, 401 F.2d 374, 381 (6th Cir. 1968)).

Jurisdiction under subsection (A)(1) of Ohio's long-arm statute is coextensive with the purposeful availment requirement of the Due Process Clause, such that the analysis above likewise satisfies the first requirement. *Burnshire Dev., LLC v. Cliffs Reduced Iron Corp.*, 198 F. App'x 425, 432 (6th Cir. 2006); *see also Speedeon Data, LLC v. Integrated Direct Mktg. LLC*, No. 1:15CV1272, 2016 U.S. Dist. LEXIS 17595, at *11 (N.D. Ohio Feb. 12, 2016).

I find that the claims asserted against Baldeo arise from her contacts with Ohio. *Calphalon Corp.*, 228 F.3d at 721. The claims against Baldeo are breach of fiduciary duty and tortious interference with economic advantage. ECF Doc. 17 at 14-15. The operative facts in the complaint are that: (i) Baldeo worked on behalf of Focuspoint, an Ohio corporation, to broker a deal with Maryland for the acquisition of facemasks, for which Focuspoint would provide procurement services; (ii) Baldeo worked in conjunction with Focuspoint's agent/employee, its President of Medical Services to broker the deal on behalf of Focuspoint; (iii) Baldeo separately contracted with Akata to provide consulting services for Akata on the same deal she allegedly was brokering on behalf of Focuspoint, in the course of which she emailed to her herself and used agreements signed by Focuspoint; and (v) through her repeated efforts to obtain a second commission via Akata, Maryland terminated negotiations. The arising-from requirement is not demanding, there need only be a marginal relationship between Baldeo's contacts with Ohio and the operative facts in the complaint. *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002). In light of that lenient standard on top of Focuspoint's slight burden, I find the operative facts from

11

which Focuspoint's claims arise sufficient to establish that its claims against Baldeo arise from her contacts in Ohio.

Both under Ohio's long-arm analysis and the due process analysis, Baldeo's list of the things she claims she did not do in Ohio is unavailing. For example, she asserts that she only dealt with Focuspoint's executive while he was in Florida; she never came to Ohio in regard to the transaction in question; and barely had any contact with the state. ECF Doc. 38 at 2, 4, 13. Those assertions utterly beg the question the court must determine. When Baldeo dealt with Hawley – which she admits she did – he was serving Focuspoint as an officer; and for purposes of our analysis, he *was* Focuspoint. Because Focuspoint is located in Ohio, Baldeo's dealings with Hawley establish the necessary contact with this state.

Having concluded that the first two criteria are met, there is a presumption that the exercise of personal jurisdiction would be reasonable. *Third Nat'l Bank v. WEDGE Grp. Inc.*, 882 F.2d 1087, 1092 (6th Cir. 1989). Baldeo does not argue against this presumption. *See generally* ECF Doc. 38. Therefore, I find that the exercise of personal jurisdiction over Baldeo would not violate due process and recommend that Baldeo's motion to dismiss under Rule 12(b)(2) be DENIED.

B. **Forum-Selection Clause**

Baldeo alternatively moves to dismiss based on a forum-selection clause in her employment agreement with ISB Canada, which states that any suit arising out of or connected with her employment agreement must be brought in Toronto, Ontario, Canada. ECF Doc. 38 at 8-10. Baldeo argues that the forum-selection clause should be enforced upon Focuspoint because Focuspoint is an affiliate of ISB Canada and, by their relationship and the fact of her employment during the operative facts, should reasonably have foreseen that Canadian law and a

Canadian venue would govern this dispute. ECF Doc. 38 at 10-12. In support, Baldeo has attached her employment agreement. ECF Doc. 38-2.

Focuspoint responds that the forum-selection clause is unenforceable against it because: (i) the amended complaint does not allege that ISB Canada and Focuspoint are affiliated entities; and (ii) the lawsuit arose out of Baldeo's conduct as an agent for Focuspoint, not her employment from ISB Canada. ECF Doc. 42 at 16-17.

A forum-selection clause can be enforced either by a motion to dismiss under Rule 12(b)(6) or the doctrine of *forum non conveniens*. *Atl. Marine Const. Co., Inc. v. United States Dist. Ct.*, 571 U.S. 49, 60 (2013); *Wilson v. 5 Choices, LLC*, 776 F. App'x 320, 326 (6th Cir. 2019). But for a non-signatory to be bound, "the party must be 'closely related' to the contracting parties or dispute such that it becomes 'foreseeable' that it will be bound." *Veteran Payment Sys., LLC v. Gossage*, No. 18-1493, 2015 U.S. Dist. LEXIS 16261, at *17 (N.D. Ohio Feb. 10, 2015) (alteration omitted) (quoting *Baker v. LeBoeuf, Lamb, Leiby &* Macrae, 105 F.3d 1102, 1106 (6th Cir. 1997)). Relevant factors are the legal relationship between the non-signatory to the contracting party and whether the non-signatory benefitted from the agreement. *Id.* at *17-18.

I find Focuspoint insufficiently connected to either ISB Canada or its employment agreement with Baldeo. Contrary to Baldeo's motion, which refers to allegations made in the initial complaint, the amended complaint alleges no relationship between Focuspoint and ISB Canada. ECF Doc. 38 at 9-11 (citing ECF Doc. 1-3); ECF Doc. 17 at 3; *Veteran Payment Sys., LLC*, No. 18-1493, 2015 U.S. Dist. LEXIS 16261, at *18; *see also Drake v. City of Detroit*, 266 F. App'x 444, 448 (6th Cir. 2008) (stating that an amended complaint supersedes the original complaint, rendering the original complaint a "nullity"). Although Baldeo was an employee of

ISB Canada, she was alleged to have been brought on to negotiate on behalf of Focuspoint because of her personal connections with Baptiste, and ISB Canada stood to gain no benefit from the N95-mask acquisition. ECF Doc. 17 at 3, 6; ECF Doc. 42-1 at 2-3. None of the allegations against her arise of her employment relationship with ISB Canada. ISB Canada is not a party to this suit. And there's no indication that Focuspoint was a party to or benefitted from Baldeo's employment agreement with ISB Canada. *Veteran Payment Sys., LLC*, No. 18-1493, 2015 U.S. Dist. LEXIS 16261, at *17-18. Under the circumstances of this case, I find that Focuspoint could not reasonably have foreseen having to be required to prosecute the case against Baldeo in Canada. *Id.* at *18-19. Thus, I recommend that Baldeo's alternative basis for dismissal be DENIED.

IV. **Recommendation**

I recommend that Baldeo's motion to dismiss (ECF Doc. 38) be DENIED.

Dated: March 8, 2022

Thomas M. Parker
United States Magistrate Judge

---

**Objections, Review, and Appeal**

Within 14 days after being served with a copy of this report and recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the magistrate judge. Rule 72(b)(2), Federal Rules of Civil Procedure; *see also* 28 U.S.C.§ 636(b)(1); Local Rule 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

\* \* \*

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be

specific and not merely indicate a general objection to the entirety of the report and recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 U.S. Dist. LEXIS 100383, *6 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).